# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| COTTONWOOD NATURAL RESOURCES, LTD., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 12-CV-0327-CVE-PJC ) |
| CIRCLE STAR ENERGY CORP., | ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Now before the Court are Defendant's Motions to Dismiss for Lack of Personal Jurisdiction and Improper Venue and Alternative Motion to Transfer Venue and Brief in Support (Dkt. # 11) and Defendant's Motion [sic] Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and Brief in Support (Dkt. # 12). Defendant Circle Star Energy Corp. (Circle) argues that it is not subject to personal jurisdiction in Oklahoma because the events giving rise to this case occurred in Fort Worth, Texas, and the case should be dismissed for lack of personal jurisdiction and improper venue. Circle has filed a separate motion asking the Court to transfer this case to the United States District Court for the Northern District of Texas, because it claims that Texas would be a more convenient forum for the parties and witnesses.

## I.

Cottonwood Natural Resources, Ltd. (Cottonwood) is a limited liability company organized under the laws of Oklahoma with its principal place of business in Tulsa, Oklahoma. Dkt. # 1, at 1. Circle is a Nevada corporation with its principal place of business in Fort Worth. Id. Cottonwood owned an option for oil and gas leases covering interests in Finney County, Kansas and,

prior to April 2012, Cottonwood had been negotiating with Encana Oil and Gas, USA and others interested in acquiring the leases. Dkt. # 15-1. The parties dispute how Circle became involved in the negotiations for the leases. Cottonwood's owner, Jeremiah Bradshaw, states that Jim Russell, an employee of Circle, approached Bradshaw's brother-in-law, Brian Winter, about Circle's possible interest in acquiring the leases. Id. at 2. Bradshaw states that he spoke to Russell on April 18, 2012, and that he had nine subsequent telephone conversations with Russell about the leases on April 18 and 19, 2012. Id. Circle's chief executive officer, S. Jeffrey Johnson, claims that Cottonwood "approached [Circle] and indicated that it had options to acquire oil and gas leases on a large amount of acreage located in Kansas," and that Cottonwood had no role in initiating the negotiations between Cottonwood and Circle. Dkt. # 11, at 25.

The negotiations between Cottonwood and Circle took place by phone and e-mail, and Circle did not send any representatives to Tulsa to negotiate for the purchase of the leases. Bradshaw states that at least three phone calls were made by Circle to Cottonwood. Dkt. # 15-1, at 2. On April 18, 2012, Bradshaw sent an e-mail to Russell with attached documents relating to Cottonwood's option to purchase acreage in Kansas. Id. Russell asked Bradshaw to send a signed copy of a purchase and sale agreement (PSA) for review by Johnson, and Bradshaw forwarded a signed copy of the PSA to Russell on April 19, 2012. Johnson signed the PSA on behalf of Circle on the same day. In the PSA, Cottonwood agreed to exercise its option for the acreage in Finney County and to have marketable title to the acreage no later than May 22, 2012. Dkt. # 1-1, at 1. The parties agreed that Jackfork Land, Inc. (Jackfork) would serve as a disinterested third party to verify that Cottonwood possessed marketable title, and the PSA states that Jackfork is located in Oklahoma City, Oklahoma. Id. Cottonwood also agreed to convey the leases to Circle in the form of a leasehold assignment

2

between May 22 and 30, 2012.  Id.  Circle agreed to pay Cottonwood $335 per net mineral acre covered by the leasehold assignment no later than May 30, 2012.  Id.

The parties' agreement was not fulfilled under the terms of the PSA, and they dispute who is responsible for the breach.  Cottonwood alleges that it fully performed its obligations under the PSA, but that Circle refused to purchase the option acreage.  Dkt. # 1, at 3.  Circle claims that Cottonwood failed to comply with the terms of the PSA, ""including but not limited to [Cottonwood's] failure to provide [Circle] with evidence of marketable title of the oil and gas leases in issue in this lawsuit . . . ."  Dkt. # 12, at 8.  On June 11, 2012, Cottonwood filed this case alleging that Circle breached the PSA and committed fraud by "falsely representing to Cottonwood that it intended to purchase the leasehold . . . ."  Dkt. # 1, at 3-4.

## II.

As to defendant's motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of establishing that the Court has personal jurisdiction over the defendant.  OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998).  "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion."  Id. (citations omitted).  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."  Id. at 1091.  "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"  Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).  The allegations of the complaint must be accepted as true

to the extent they are uncontroverted by a defendant's affidavit. Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990). If the parties provide conflicting affidavits, all factual disputes must be resolved in plaintiff's favor and a prima facie showing of personal jurisdiction is sufficient to overcome defendant's objection. Id.

Defendant's motion to dismiss for improper venue falls under Fed. R. Civ. P. 12(b)(3). Once an issue as to venue has been raised, the plaintiff bears the burden to show that venue is proper. McCaskey v. Continental Airlines, Inc., 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001). When venue is challenged under Rule 12(b)(3) and the parties have not requested an evidentiary hearing, the plaintiff must make only a prima facie showing that venue is proper in its chosen forum. Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004); Delong Equipment Co. v. Washington Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988). On a Rule 12(b)(3) motion, the Court may consider matters outside the pleadings, and facts alleged in the complaint are taken as true to the extent that they are uncontroverted by defendant's evidence. See Ben-Trei Overseas, L.L.C. v. Gerdau Ameristeel US, Inc., 2010 WL 582205, *3 (N.D. Okla. Feb. 10, 2010); see also Sucampo Pharms., Inc. v. Astellas Pharma, 471 F.3d 544, 549-50 (4th Cir. 2006); Kukje Hwajae Ins. Co., Ltd. v. M/V Hyundai Liberty, 408 F.3d 1250, 1254 (9th Cir. 2005); Pierce v. Shorty Small's of Branson Inc., 137 F.3d 1190, 1192 (10th Cir. 1998); Vazquez v. Central States Joint Bd., 547 F. Supp. 2d 833, 865 n.18 (N.D. Ill. 2008). The Court must "draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004).

As to defendant's motion to transfer venue under 28 U.S.C. § 1404, defendant bears the burden to establish that plaintiff's chosen forum is inconvenient, and plaintiff's choice of forum is

4

given considerable weight.  Scheidt v. Klein, 956 F.2d 963, 966 (10th Cir. 1992).  A court should not transfer venue merely to shift the inconvenience of litigating from one party to another, and the party seeking a transfer of venue must make a strong showing that the forum is inconvenient. Employers Mut. Cas. Co. v. Bartile Roofs, 618 F.3d 1153, 1168 (10th Cir. 2010).  When reviewing a motion to transfer venue under § 1404, a court may consider evidence outside of the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party. Huang v. Napolitano, 721 F. Supp. 2d 46, 48 n.3 (D.D.C. 2010); United States v. Gonzalez & Gonzales Bonds and Ins. Agency, Inc., 677 F. Supp. 2d 987, 991 (W.D. Tenn. 2010).

### III.

Defendant argues that it does not have sufficient minimum contacts with Oklahoma for the Court to exercise personal jurisdiction over it.  Defendant also claims that the Northern District of Oklahoma is not a proper venue, and the Court should dismiss the case for improper venue or transfer the case to the Northern District of Texas.  Plaintiff responds that defendant sought out plaintiff in Oklahoma for the purpose of purchasing oil and gas leases and that defendant is subject to specific personal jurisdiction in this Court.  Plaintiff also argues that venue is proper in the Court and the Court should not transfer the case to the Northern District of Texas merely to shift the inconvenience associated with litigation from defendant to plaintiff.

### A.

Plaintiff argues that the Court has personal jurisdiction over defendant, because defendant entered a contractual relationship with an Oklahoma business and plaintiff's claims arise out of

5

defendant's contacts with Oklahoma.[1] For a court to exercise personal jurisdiction over a nonresident defendant in a diversity action, plaintiff must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. See OKLA. STAT. tit. 12, § 2004(F). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988)); see also Hough v. Leonard, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could reasonably anticipate being haled into court in that state." Conoco, Inc. v. Agrico Chem. Co., 115 P.3d 829, 835 (Okla. 2004) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" Intercon, 205 F.3d at 1247 (quoting World-Wide Volkswagen, 444 U.S. at 291). The existence of such minimum contacts must be shown to support the exercise of either general jurisdiction or specific jurisdiction. A court "may, consistent

---

[1] Plaintiff's breach of contract and fraud claims are based on the same set of facts and it is not necessary to analyze personal jurisdiction separately as to each claim. However, the Court notes that Oklahoma law does not permit a party allegedly aggrieved by another's non-performance under a contract to allege a fraud claim unless the breaching party has engaged in a fraudulent act that is sufficiently independent from the alleged breach of contract. McGregor v. National Steak Processors, Inc., 2012 Wl 314059 (N.D. Okla. Feb. 1, 2012); Edwards v. Farmers Ins. Co., 2009 WL 4506218 (N.D. Okla. Nov. 24, 2009): Pointer v. Hill, 536 P.2d 358 (Okla. 1975).

with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" Id. at 1247 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). "When a plaintiff's cause of action does not arise directly from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." Id. at 1247 (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 & n.9 (1984)).

Plaintiff does not argue that the Court has general personal jurisdiction over defendant. Instead, plaintiff argues that defendant's contacts with Oklahoma arising out of the PSA are sufficient to subject defendant to specific personal jurisdiction in Oklahoma. For a court to exercise specific jurisdiction over a nonresident defendant, a plaintiff must show that "the defendant has 'purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state'" and that "the litigation results from alleged injuries that arise out of or relate to those activities." Employers Mut. Cas. Co., 618 F.3d at 1160. The existence of an agreement or contract, standing alone, may not be enough to justify the assertion of personal jurisdiction over a non-resident defendant, but "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." Marcus Food Co. v. DiPanfilo, 671 F.3d 1159, 1166 (10th Cir. 2011). In a contract case, a court should consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." AST Sports Science, Inc. v. CLF Distribution Ltd., 514 F.3d 1054, 1058 (10th Cir.

7

2008). The mere presence of one of the contracting parties in the forum state may not be enough to support the exercise of personal jurisdiction over a non-resident defendant, and the "contract relied upon to establish minimum contacts must have a 'substantial connection' with the forum state." TH Agriculture & Nutrition, LLC v. Ace European Group Ltd., 488 F.3d 1282, 1292 (10th Cir. 2007).

Defendant argues that it does not conduct business in Oklahoma, that all of the communications between the parties took place through defendant's employees located in Texas, and that none of the significant events giving rise to plaintiff's claims occurred in Oklahoma. Defendant offers a one-sided view of the evidence, and it is clear that communications between the parties were not unilateral acts by plaintiff that should be disregarded in the personal jurisdiction analysis. See Dudnikov v. Chalk & Vermillion Fine Arts, Inc., 514 F.3d 1063 (10th Cir. 2008) (the "unilateral activity of another party 'is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction'"). Instead, the parties engaged in mutual negotiations for the sale of oil and gas leases, and Bradshaw states that at least three telephone calls were made by defendant to plaintiff. Dkt. # 15-1, at 2. The parties dispute who initiated negotiations for the sale of the oil and gas leases. Defendant states that "Plaintiff approached Defendant and indicated that it had options to acquire oil and gas leases on a large amount of acreage located in Kansas." Dkt. # 11, at 6. Bradshaw states that Russell approached plaintiff about defendant's interest in purchasing the oil and gas leases. Dkt. # 15-1. At this stage of the case, the Court is required to resolve factual disputes in favor of plaintiff and, for the purpose of ruling on the pending motions, the Court will assume that defendant initially

approached plaintiff about obtaining the oil and gas leases. See Melea, Ltd. v. Jawer SA, 511 F.3d 1060, 1065 (10th Cir. 2007).

Defendant has identified certain facts suggesting that key parts of the parties' transaction were not to take place in Oklahoma. The oil and gas leases at issue concerned acreage in Kansas, and the parties were not negotiating for the sale of any mineral interests in Oklahoma. The PSA also states that the closing would "take place in the business office of CIRCLE in Forth Worth, Texas, on or before May 30, 2012." Dkt. # 11, at 29. This fact is somewhat less important because the closing did not take place as scheduled, and plaintiff has brought this lawsuit because defendant has refused to purchase the oil and gas leases.

Considering the allegations of the complaint and the evidence submitted by the parties, the Court finds that defendant is subject to specific personal jurisdiction in Oklahoma. Defendant reached out to an Oklahoma business to inquire about the purchase of oil and gas leases and the parties entered negotiations. Although defendant was located in Texas, it was knowingly engaging in an interstate transaction with an Oklahoma business. Defendant made at least three telephone calls to Oklahoma in furtherance of the negotiations. Dkt. # 16-1, at 2. Plaintiff sent documents to defendant from its Tulsa office and plaintiff executed the PSA in Tulsa. The parties engaged in additional communications after the PSA was executed, including e-mails and phone calls by defendant to plaintiff. Id. The parties also envisioned an ongoing business relationship, because plaintiff retained a royalty interest in all "oil, gas, and associated hydrocarbons produced, saved, marketed or transported" from the leases. Dkt. # 1-1, at 4. Defendant could have reasonably foreseen that a breakdown in the contractual relationship would subject it to suit in Oklahoma, and the Court may exercise personal jurisdiction over defendant.

9

Even though the Court has found that it has personal jurisdiction over defendant, the Court must also consider whether the assertion of personal jurisdiction over defendant "comport[s] with 'fair play and substantial justice.'" Trujillo v. Williams, 465 F.3d 1210, 1221 (10th Cir. 2006) (quoting Equifax Servs., Inc. v. Hitz, 905 F.2d 1355, 1359 (10th Cir. 1990)). The Court must consider five factors to determine if the exercise of personal jurisdiction over defendant would be reasonable:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

Id. (quoting Pro Axess, 428 F.3d at 1279-80). The Tenth Circuit has stated that a defendant must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable" and "[s]uch cases are rare." Rusakiewicz v. Lowe, 556 F.3d 1095, 1102 (10th Cir. 2009). The reasonableness prong of the due process inquiry "evokes a sliding scale," and a defendant may need less to defeat a showing of personal jurisdiction if the plaintiff's showing of minimum contacts is relatively weak. TH Agriculture & Nutrition, LLC, 488 F.3d at 1292.

The Court finds that plaintiff has made a relatively strong showing of personal jurisdiction and defendant must present a compelling argument that it would be improper for the Court to exercise personal jurisdiction over it. As to the first Trujillo factor, defendant argues that it would face a substantial burden if it were required to litigate in this forum, because all of its witnesses and documentary evidence are located in Texas. The Court will take defendant's inconvenience into account, but notes that Fort Worth, Texas is not so far from Tulsa that it is beyond a short plane flight or a drive of a few hours. Defendant claims that Oklahoma has little interest in the parties'

dispute and that the second Trujillo factor favors defendant. Defendant argues that plaintiff's alleged injury occurred in Texas and there is no choice of law provision stating that Oklahoma law will apply to this dispute. The Court declines to consider the choice of law issue, because neither party has provided an analysis concerning which state's law will apply to this case and the Court will not speculate as to whether Texas or Oklahoma law will apply. Defendant's argument as to the location of the injury ignores the fact that plaintiff is located in Oklahoma and the effect of any wrongful conduct by defendant was felt by plaintiff in Oklahoma. Oklahoma clearly has in interest in providing a forum for an Oklahoma business to resolve a contractual dispute, and the second Trujillo factor does not support defendant's request for dismissal. The third Trujillo factor "hinges on whether the [p]laintiff may receive convenient and effective relief in another forum." AST Sports Science, 514 F.3d at 1062 (quoting Pro Axess, 428 F.3d at 1281). Defendant has not shown that another forum would be more convenient for all of the parties, even if it would be convenient for defendant to litigate in Texas, and plaintiff may certainly receive complete relief for its breach of contract claims in this Court. The fourth Trujillo factor considers "whether the forum state is the most efficient place to litigate the dispute," and a court should take into account the "location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." Id. at 1062. In this case, the choice of forum will subject one of the parties to some inconvenience, but defendant has not shown that it will be substantially burdened if it is required to defend against plaintiff's claims in Oklahoma. Neither party has provided a choice-of-law analysis and there is no concern about piecemeal litigation. This Court will provide an efficient forum for the parties to litigate their contractual dispute, and defendant has not shown that any issues will prevent the full and fair

11

adjudication of plaintiff's claims. Neither party has raised any argument that the fifth Trujillo factor (shared interests of the states) weighs for or against dismissal, and the Court does not find that the fundamental social policies of Oklahoma or Texas will be affected if the Court retains jurisdiction over this case.

Considering all of the Trujillo factors, the Court finds that defendant has not made a compelling case that it would offend traditional notions of fair play and substantial justice to subject defendant to personal jurisdiction in Oklahoma, and defendant's motion to dismiss for lack of personal jurisdiction should be denied.

**B.**

Defendant argues that the Northern District of Oklahoma is not a proper forum for this case under 28 U.S.C. § 1391, and defendant asks the Court to dismiss the case for improper venue or transfer the case to the Northern District of Texas. Plaintiff responds that defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and venue is proper under § 1391(b)(1). Plaintiff also argues that a substantial part of the events giving rise to the case occurred in Tulsa, and this Court is a proper venue under § 1391(b)(2).

Under § 1391(b)(1), venue is proper in any "judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located . . . ." A corporation "shall be deemed to reside in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). In this case, the Court has already determined that defendant is subject to personal jurisdiction in the Northern District of Oklahoma and, thus, this Court is a proper venue for plaintiff's claims against defendant. Defendant argues that it would be inconvenient for it to litigate in this forum, but "such

12

considerations of hardship or inconvenience of venue . . . are the concern of a separate statute for transfer." First Sec. Bank of Utah, N.A. v. Aetna Cas. & Sur. Co., 541 F.2d 869, 872 (10th Cir. 1976). Thus, defendant's request to dismiss this case for improper venue should be denied.

Defendant has filed a separate motion to transfer this case to the Northern District of Texas for the convenience of the parties and witnesses. Dkt. # 12. Under 28 U.S.C. § 1404(a), a court may transfer a case to any judicial district in which it could originally have been filed "[f]or the convenience of parties and witnesses." The Tenth Circuit has identified several factors that should be considered by a district court when ruling on a motion to transfer:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws, the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991). When a party files a motion to transfer venue, the moving party has the burden to prove inconvenience to the parties and witnesses. Rivendell Forest Prods., Ltd., v. Canadian Pacific Ltd., 2 F.3d 990, 993 (10th Cir. 1993). Unless the moving party carries its burden to prove inconvenience to the parties and witnesses and the balance is "strongly" in favor of the moving party, the plaintiff's choice of forum should not be disturbed. Scheidt v. Klein, 956 F.2d 963, 966 (10th Cir. 1992), 956 F.2d at 965. "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue." Id.

The first factor the Court should consider is whether plaintiff's choice of forum is entitled to deference. Defendant argues that the events giving rise to the case have no significant connection

to Oklahoma, and plaintiff's choice of forum should be given no deference. Dkt. # 12, at 7. Plaintiff responds that it resides in the Northern District of Oklahoma and that the PSA was negotiated, in part, in Oklahoma, and it has chosen a forum with a significant connection to the lawsuit. Dkt. # 15, at 4. The Court notes that at least three possible forums have some interest in the lawsuit. Plaintiff is located in Oklahoma and defendant maintains its principal place of business in Texas, but they were negotiating for the sale of oil and gas leases located in Kansas. Where there is no single forum that most obviously is the only correct forum, the plaintiff's chosen forum is generally given great deference if it has selected a forum with a significant connection to the lawsuit. See Employers Mut. Cas. Co., 618 F.3d at 1168. For the purpose of ruling on defendant's motion, the Court assumes that defendant initiated contact with plaintiff for the sale of oil and gas leases and defendant knew plaintiff was located in Oklahoma. Defendant negotiated with plaintiff in Oklahoma and entered a long-term contractual relationship with an Oklahoma business concerning the payment of oil and gas royalties. This is more than sufficient to show that Oklahoma has a significant interest in this dispute and plaintiff's choice of forum is entitled to great deference.

The second Chrysler Credit factor is the accessibility of witnesses and other sources of proof. The movant must do more than generally allege that the plaintiff's chosen forum would be inconvenient and, instead, the movant must "(1) identify the witnesses and their locations; (2) 'indicate the quality or materiality of the[ir] testimony', and (3) 'show[ ] that any such witnesses were unwilling to come to trial . . .[,] that deposition testimony would be unsatisfactory[,] or that the use of compulsory process would be necessary.'" Id. at 1169 (quoting Scheidt, 956 F.2d at 966). Each party argues that its witnesses and other evidence is located in its home office and that it would be costly and inconvenient to litigate in another forum. Defendant has identified three witnesses

who are located in Texas, but plaintiff is correct that only one of the witnesses actually resides in the Northern District of Texas. Defendant offers no evidence as to whether these witnesses would unwilling to testify in the Northern District of Oklahoma or if these witnesses could be presented by deposition. Defendant has not shown that it would be substantially more convenient for the majority of witnesses to appear in the Northern District of Texas or that it would any more inconvenient for the witnesses if the case remains in this Court. Defendant has not identified any other evidence, such as documents, that it would be costly for it to produce for discovery in the Northern District of Oklahoma, and the second Chrysler Credit factor does not weigh in favor of defendant. The third factor (the cost of litigation) is closely related to the second factor. Defendant argues that it would incur additional travel expenses if it were required to litigate in this Court, but plaintiff would incur these same costs if the case were transferred. As the Court has noted, the purpose of a venue transfer is not simply to shift the cost of litigating from one side to the other, and the third factor does not favor defendant's request to transfer venue.

The fourth, fifth, and sixth factors are closely related. Defendant argues that the fourth factor favors transfer to the Northern District of Texas, because plaintiff will have a difficult time enforcing a judgment entered by this Court. Plaintiff responds that this problem can easily be overcome by registering a judgment entered by this Court with the Northern District of Texas, and the judgment can be enforced as if it were entered by the Northern District of Texas. Dkt. # 15, at 8. Defendant has not identified any evidence suggesting that it will be unable to receive a fair trial, and the fifth factor does not favor transfer. Defendant makes no argument concerning the sixth factor (congestion of court dockets), but this Court does not have a congested dockets and the parties will not face any delay by litigating in this Court.

Defendant argues that the seventh and eighth factors favor a transfer to a federal court in Texas, because Texas law will apply to this case and a federal court in Texas would be more familiar with Texas law. Neither party has provided a substantial choice of law analysis and the Court declines to speculate which state's law will apply to the parties' dispute. Even if Texas law were to apply, defendant has not shown that Texas contract law substantially differs from Oklahoma law or that this particular dispute involves a unique or unsettled area of law that requires a special expertise in Texas law. Finally, defendant has not identified any practical considerations that would make a trial more easy, expeditious, or economical in the Northern District of Texas, and the ninth factor does not support defendant's request to transfer venue.

Balancing all of the Chrysler Credit factors, the Court does not find that the convenience of the parties and the witnesses strongly favors transfer of this case to the Northern District of Texas, and defendant's motion to transfer venue under § 1404 should be denied.

**IT IS THEREFORE ORDERED** that Defendant's Motions to Dismiss for Lack of Personal Jurisdiction and Improper Venue and Alternative Motion to Transfer Venue and Brief in Support (Dkt. # 11) and Defendant's Motion [sic] Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and Brief in Support (Dkt. # 12) are **denied**.

**IT IS FURTHER ORDERED** that defendant shall file its Answer to the Complaint within 14 days, or no later than **September 19, 2012.**

**DATED** this 5th day of September, 2012.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE